**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JAMES MICHAEL CRUDER,

   Petitioner,

                                  CASE NO. 2:11-CV-13646

v.                               HONORABLE MARIANNE O. BATTANI
                                   UNITED STATES DISTRICT COURT

PAUL KLEE,

     Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

James Michael Cruder, ("Petitioner"), confined at the Gus Harrison Correctional Facility in St. Louis, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed pro se, petitioner challenges his conviction for firearm possession by felon, MC.L.A. 750.224f; and possession of a firearm during the commission of a felony (felony firearm), M.C.L.A. 750.227b. For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

### I. Background

Petitioner was convicted of the above offenses following a waiver trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas

1

review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F. 3d 410,

413 (6th Cir. 2009):

> Cruder and codefendant Fred Gordon were arrested after officers on patrol in the early morning hours witnessed them purchasing heroin from the driver of a pickup truck. When police activated their vehicle lights, Cruder and Gordon ran toward a house.  A woman came to the door and beckoned them inside. Gordon was arrested outside the house and charged with possession of over 50 grams of heroin. Cruder was arrested in the living room of the house, after he discarded a handgun. While charges were initially dismissed, both Cruder and Gordon were subsequently charged and separately rearraigned. Gordon pleaded guilty to possession of drugs. Cruder waived his right to a jury trial and testified that he was present in the area because his car broke down, but denied having a weapon, entering a house, seeing a pickup truck or having any knowledge regarding the heroin in Gordon's possession.

People v. Cruder, No. 292743, *1, (Mich. Ct. App. Sept. 16, 2010).

Petitioner's conviction was affirmed on appeal. Id.; lv. den. 489 Mich. 858,

795 N.W.2d 10 (2011).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.    Appellant James Michael Cruder is entitled to a new trial where the trial court, sitting as the fact-finder, violated appellant's constitutional right to confront the witnesses against him by relying upon the co-defendant's guilty plea and a missing res gestae witness hearsay statement as substantive evidence to find him quilty of the felony [sic] in possession of a firearm and felony firearm. US Const Ams VI,XIV; Const 1963 Art1 Sec 17, 20.

II.   Appellant James Michael Cruder is entitled to a new trial where he was denied is [sic] right to effective assistance of counsel guaranteed him by the federal and state constitutions.  US Const Am VI; Const 1963 Art 1 sec 20.

      A. [D]efense counsel failed to obtain the presence of res gestae witnesses[.]

2

B. The record establishes that trial counsel had a conflict of interest and failed to disclose this fact.  His joint representation of the appellant and the co-defendant constitutes ineffective assistance of counsel.

C.  Defense counsel was ineffective where he failed to disqualify the judge who accepted the co-defendant's guilty plea from sitting as the fact-finder.

III.   Defendant  was denied an appeal of right where appellate counsel raised a claim of ineffective assistance of trial counsel but failed to file a motion for a <u>Ginther</u> Hearing in order to rebut the presumption that trial counsel's actions were strategy as opposed to deficient performance.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

3

Supreme Court has on a set of materially indistinguishable facts. <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." <u>Id</u>. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id</u>. at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" <u>Renico v. Lett</u>, 130 S.Ct. 1855, 1862 (2010)((quoting <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n. 7 (1997); <u>Woodford v. Viscotti</u>, 537 U.S. 19, 24 (2002)(<u>per curiam</u>)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011)(citing <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id</u>. ( citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)).  Furthermore, pursuant to §

4

2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id.

"[I]f this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id.  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979)(Stevens, J., concurring in judgment)).  In fact, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford, 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." <u>Harrington</u>, 131 S. Ct. at 786-87.

### III.  Discussion

### A. Claim # 1.  Confrontation Clause.

Petitioner first alleges that the trial court violated his constitutional right to confront witnesses against him by relying upon the co-defendant's guilty plea and relying upon a hearsay statement from a missing <u>res</u> <u>gestae</u> witness.

The Michigan Court of Appeals found that the trial court did make a passing reference to the co-defendant's guilty plea but that it was in the context of the overwhelming evidence presented against petitioner compared to a completely different set of facts testified to by the petitioner at his waiver trial. The trial court found:

> "defendant's version of what happened to be so implausible and so preposterous and so different than the officer's version of what happened that it just simply belies credibility." The trial court did not use Gordon's plea as a basis to convict Cruder but merely referenced it within the multitude of reasons it reviewed in explaining its determination that Cruder's version of events was simply too incredible to be believed and to address defense counsel's contention that the police officers involved in Cruder's arrest fabr icated (sic) the evidence.

Slip. Op. at * 2.

Petitioner objects to reference to his co-defendant's guilty plea. The trial judge's comment regarding the guilty plea does not constitute testimony as to invoke the Confrontation Clause.  The reference was made in considering testimony given by petitioner which totally contradicted the facts and testimony

6

produced at trial by the prosecution.  Furthermore, the trial court judge took the

co-defendant's guilty plea, and merely mentioned it as an aside when making his

findings following petitioner's waiver trial.  It should be noted that petitioner

requested that this judge hear his case.  Issues pertaining to this judge sitting as

the trier-of-fact will be addressed in Issue II.

Due process requires the trier of fact to be "capable and willing to decide

the case solely on the evidence before it." Smith v. Phillips, 455 U.S. 209, 217

(1982). In a non-jury trial, however,

> the introduction of incompetent evidence does not require a reversal in the
> absence of an affirmative showing of prejudice. The presumption is that
> the improper testimonial evidence, taken under objection, was given no
> weight by the trial judge and the Court considered only properly admitted
> and relevant evidence in rendering its decision.

United States v. McCarthy, 470 F.2d 222, 224 (6th Cir.1972). "The admission of

such evidence is deemed harmless if there is relevant and competent evidence

to establish defendant's guilt in absence of the objectionable proof." Id.  In light

of the evidence produced at trial, the trial court had sufficient evidence to support

a finding that petitioner had a handgun and was involved at the time in criminal

activity.

Petitioner also complains that the trial court judge made a comment in his

findings of fact pertaining to how police officers do not like to engage in hot

pursuit.  The comment regarding the chase was to illustrate a scenario where an

7

angry officer would make up a fact after a heavy chase.  The judge's comments

about the police not liking to chase defendants was made in passing and actually

worked to petitioner's benefit, as the judge noted that it could have given police a

motive to fabricate a charge against Petitioner for running.  The trial court judge

informed the petitioner that had the only conflicting evidence involved the

possession of a firearm, the judge would have found petitioner's testimony more

credible.  Because petitioner provided a totally different set of facts, the trial court

judge found the prosecution's evidence more credible.

Petitioner next contends that the trial court considered impermissible

hearsay concerning a statement from a missing res gestae witness "y'all come

on in," at the time of the police chase which led to petitioner's arrest.  The

Michigan Court of Appeals rejected this claim, finding that defense counsel had

opened the door to this testimony by eliciting the statement from the police

officer in a leading question. Cruder, Slip. Op. at * 2.  The trial court record also

reflects that trial counsel intentionally mentioned the res gestae witness on direct

examination and it was counsel who  directly asked the officer if this unknown

woman said, "y'all come on in." (T. 5/13/2009 p. 20).

A defendant in a criminal case cannot complain of error which he himself

has invited. Shields v. United States, 273 U.S. 583, 586 (1927).  When a

petitioner invites an error in the trial court, he is precluded from seeking habeas

corpus relief for that error. See Fields v. Bagley, 275 F. 3d 478, 486 (6th Cir.

8

2001).  In the present case, Petitioner's counsel's questioning opened the door to the officers' testimony that an unknown woman who saw petitioner running from the police, opened her door and said, "y'all come on in."  Because Petitioner invited the error here, he cannot obtain habeas relief.

In any event, petitioner's confrontation rights were not violated by the admission of the res gestae witness' comments.

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. See Crawford v. Washington, 541 U.S. 36 (2004).  However, the Confrontation Clause is not implicated, and thus does not need not be considered, when non-testimonial hearsay is at issue. See Davis v. Washington, 547 U. S. 813, 823-26 (2006); See also Desai v. Booker, 538 F.3d 424, 425-26 (6th Cir. 2008). Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. Crawford, 541 U.S. at 51-52, 56.

Furthermore, in Davis v. Washington, the Supreme Court ruled that statements taken by police officers during the course of police questioning are considered "nontestimonial," and not subject to the Confrontation Clause, when they are made "under circumstances objectively indicating that the primary

9

purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Id. at 822.

In Davis, the Supreme Court held that statements made by a domestic abuse victim in response to a 911 operator's questions while the defendant was inside her home in violation of a no-contact order, in which the victim identified her assailant, were not "testimonial" and, therefore, were not subject to the Confrontation Clause, because the victim was speaking about events as they were actually happening, rather than describing past events, and the primary purpose of the 911 operator's interrogation was to enable police assistance to meet an ongoing emergency caused by a physical threat to the victim. Id. at pp. 826-28. In so ruling, the Supreme Court noted "[A] 911 call....and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to "establis[h] or prov[e]" some past fact, but to describe current circumstances requiring police assistance." Id. at p. 827.

In the present case, the petitioner was running from the police when an unknown woman opened the door to her house and said, "y'all come on in." (T. 5/13/2009, pp. 20, 54). The police arrested the woman and also took her in for questioning after finding contraband in the house.   In the present case, the unknown woman's statement was non-testimonial because it was made in the context of an ongoing emergency, hence, its admission did not violate petitioner's right to confrontation.

10

The woman's statement was probably also admissible for the non-hearsay purpose of describing the ongoing police investigation of petitioner and his co-defendant.  The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at 59, n. 9; See also Tennessee v. Street, 471 U.S. 409, 414 (1985)(defendant's rights under the Confrontation Clause were not violated by introduction of an accomplice's confession for the nonhearsay purpose of rebutting defendant's testimony that his own confession was coercively derived from the accomplice's statement).  Indeed, "[I]n some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay." United States v. Gibbs, 506 F. 3d 479, 486-87 (6th Cir. 2007) (quoting United States v. Martin, 897 F. 2d 1368, 1371 (6th Cir.1990)).  Evidence that is provided merely by way of background or is offered only to explain how certain events came to pass or why law enforcement officers took the actions that they did is not offered for the truth of the matter asserted, and thus cannot trigger a Confrontation Clause violation. See U.S. v.Warman, 578 F. 3d 320, 346 (6th Cir. 2009)(quoting United States v. Cromer, 389 F.3d 662, 676 (6th Cir.2004)).

The record reflects that the brief statement made by the res gestae witness is a part in the sequence of events that transpired in the early morning hours leading up to petitioner's arrest.  The prosecution alleged that the woman

11

opened her door to assist petitioner in his escape from the police. Petitioner then testified at trial that the police stopped him while he and his co-defendant were putting antifreeze in his car and then proceeded to knock on doors, for reasons unknown, until this woman opened her front door. Clearly, the brief comment is part of the background information of what occurred during the early morning hours and would not be subject to the Confrontation Clause. Petitioner is not entitled to habeas relief on his first claim.

### B. Claims # 2 and 3. Ineffective assistance of trial and appellate counsel.

For purposes of judicial economy, the Court will next consider petitioner's second and third claim together. Petitioner next contends that he was deprived of the effective assistance of trial counsel when his trial counsel failed to 1) obtain the presence of res gestae witnesses, 2) disclose that he represented the co-defendant to the trial court, and 3) disqualify the judge who accepted the co-defendant's plea from sitting as the fact-finder.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong

presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. Strickland, 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. Id. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard applies as well to claims of ineffective assistance of appellate counsel. See Whiting v. Burt, 395 F. 3d 602, 617 (6th Cir. 2005). The Supreme Court's holding in Strickland places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. See Wong v. Belmontes, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)(quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's

13

performance fell below Strickland's standard." Harrington v. Richter, 131 S. Ct. at 785.  Indeed, "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles, 556 U.S. at 123 (citing Yarborough v. Alvarado, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a Strickland claim brought by a habeas petitioner. Id.  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself."Harrington, 131 S. Ct. at 785.  "Surmounting Strickland's high bar is never an easy task." Id. at 788 (quoting Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011).

14

In his second claim, petitioner first contends that his trial counsel was ineffective for failing to obtain the presence of <u>res</u> <u>gestae</u> witnesses Nikita Wallace and Kevin Zarosly.

Although the petitioner briefly mentioned the names of the woman in the Lakepointe House, Nakita Wallace, and Officer Kevin Zarosly, that he contends should have been called on his behalf, the petitioner failed to supply affidavits from these witnesses to the state courts, nor has he provided this Court with any affidavits from these witnesses concerning their proposed testimony and willingness to testify on the petitioner's behalf.  Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. See <u>Workman v. Bell</u>, 178 F.3d 759, 771 (6th Cir. 1998).  By failing to present any evidence to the state courts in support of his ineffective assistance of claim, the petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. See <u>Cooey v. Coyle</u>, 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)). The petitioner has failed to attach any offer of proof or any affidavits sworn by the proposed witnesses.  The petitioner has offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether the witnesses would have been able to testify and what the content of these witnesses' testimony would have been.  In the absence of such proof, the petitioner is unable to establish that he was prejudiced by counsel's failure to call

15

these witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. See Clark v. Waller, 490 F. 3d 551, 557 (6th Cir. 2007). Trial counsel's failure to call the woman in the Lakepointe house and Officer Zarosly did not constitute ineffective assistance of counsel. See Salter v. Johnson, 579 F.2d 1007, 1009 (6th Cir. 1978).  Without evidence to the contrary, it is conceivable that Officer Zarosly and  Nakita Wallace could have buttressed the prosecution's case and counsel chose to make reference to the unknown woman, rather than elicit damaging testimony.  Regardless, the burden is on petitioner to produce evidence, rather than mere allegations, that these witnesses would have effected the outcome.

Petitioner next contends that trial counsel was ineffective for failing to disclose to the trial court that he had represented the co-defendant.  He also claims that the joint representation constituted ineffective assistance of counsel.

Defense attorneys owe their clients a duty of loyalty, including the duty to avoid conflicts of interest. Strickland v. Washington, 466 U.S. at 688(citing to Cuyler v. Sullivan, 446 U.S. 335, 346 (1980)).  A criminal defendant is entitled to effective assistance of counsel that is free from conflict. See Holloway v. Arkansas, 435 U.S. 475, 483-84 (1978); Robinson v. Stegall, 343 F. Supp. 2d 626, 633 (E.D. Mich. 2004).

The Supreme Court has recognized that in certain Sixth Amendment contexts, prejudice is presumed. Strickland, 466 U.S. at 692.  The "actual or

16

constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.  So are various kinds of state interference with counsel's assistance." Id.  The Strickland court further noted that there was one type of ineffective assistance of counsel claim that warranted a "similar, though more limited, presumption of prejudice", namely, cases involving an actual conflict of interest that adversely affects counsel's performance. Id.  This reference was to the Supreme Court's ruling in Cuyler v. Sullivan, supra, where the Supreme Court held that in order to establish a Sixth Amendment violation resulting from the joint representation of multiple defendants by a single attorney, a defendant who fails to object at trial must demonstrate that an actual conflict of interest exists that adversely affected his  attorney's performance.

The Sixth Circuit, however, "has consistently held that, for § 2254 cases, the Sullivan standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the Strickland standard applies." Stewart v. Wolfenbarger, 468 F. 3d 338, 351 (6th Cir. 2006)(collecting cases).  In Stewart, the Sixth Circuit rejected the idea that counsel labored under a conflict of interest due to the fact that she had previously represented another man who had also been charged with the victim's murder, but against whom the charge had been dismissed prior to the murder charge being filed against petitioner. Id.  Because counsel's representation ended before her representation of petitioner began, the Sixth

17

Circuit concluded that this was not a case of multiple concurrent representation, therefore, the Strickland standard applied in reviewing petitioner's claim. Id.

Likewise, counsel's representation of petitioner's co-defendant ended prior to petitioner's representation.  Furthermore, defense counsel's failure to interview or to consider calling co-defendant Gordon to testify on petitioner's behalf did not deprive petitioner of the effective assistance of counsel.  Had defense counsel attempted to interview or call Gordon as a witness, he would likely have invoked his Fifth Amendment right against self-incrimination and refused to testify. Stewart, 468 F. 3d at 352.  In this case, it is highly speculative that Gordon would have incriminated himself or deflected suspicion from petitioner, nor is there any showing that Gordon would have offered any exculpatory testimony at trial. Id.  Petitioner has failed to show that he was prejudiced by counsel's brief representation of Gordon prior to representing petitioner in this case.

Petitioner's final allegation pertains to trial counsel's failure to motion to disqualify or recuse the trial court judge.  Assuming that counsel was deficient in consenting to a bench trial before the judge, petitioner has presented no evidence that trial court judge had a preconceived notion of petitioner's guilt with respect to this charge or that the judge's rulings were biased in any way. Petitioner has therefore failed to show that he was prejudiced by counsel's failure to move for the disqualification of this judge. See Willis v. Smith, 351 F.

18

3d 741, 745-46 (6th Cir. 2003)(trial counsel's consent to bench trial before judge who had stated at co-defendants' trials that petitioner appeared to be "big guy" in conspiracy to distribute cocaine was not objectively unreasonable, as required to support claim for ineffective assistance; judge's comments did not reveal preconceived notion of petitioner's guilt); Walendzinski v. Renico, 354 F. Supp. 2d 752, 758 (E.D. Mich. 2005)(counsel's advice that petitioner agree to bench trial in front of judge who had presided over his pre-trial suppression hearing and co-defendant's jury trial did not prejudice defendant, and thus was not ineffective assistance; there was no evidence judge was biased against defendant, judge indicated in findings of fact that he based his decision only on evidence at trial and decided case separately from the co-defendant's trial).

Furthermore, the record reflect that at the beginning of petitioner's waiver trial he specifically request that this judge act as the fact finder:

> "[M]r. Cruder tells me he wants you to hear this case despite the fact you heard the motions and despite he has a constitutional right to a jury trial."

(T. 5/13/2009, pp. 3-4).

Petitioner has failed to show that trial counsel was ineffective for not producing two witnesses which he speculates would have supported his position at trial. He has also failed to show that counsel was ineffective because of his representation of the co-defendant which resulted in a guilty plea prior to petitioner's waiver trial.  Furthermore, petitioner cannot claim that his trial counsel was ineffective for failing to disqualify the trial court judge when he

19

specifically requested that this judge sit as the finder-of-fact on his waiver trial.

Being that trial counsel was not ineffective in representing petitioner, appellate

counsel was not ineffective for failing to file for a <u>Ginther</u> hearing in connection

with trial counsel's representation. See <u>Young v. Miller</u>, 883 F. 2d 1276, 1280 (6th

Cir. 1989).   Petitioner is not entitled to habeas relief on his second and third

claims.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in

order to appeal the denial of a habeas petition for relief from either a state or

federal conviction. [1] 28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA

"only if the applicant has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2).  When a federal district court rejects

a habeas claim on the merits, the substantial showing threshold is met if the

petitioner demonstrates that reasonable jurists would find the district court's

assessment of the constitutional claim debatable or wrong. See <u>Slack v.</u>

<u>McDaniel</u>, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by

demonstrating that ... jurists could conclude the issues presented are adequate

---

[1]   Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. at 327.  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-37.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. See Millender v. Adams, 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability. See Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed in forma pauperis on appeal. Id.

21

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of

Habeas Corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **GRANTED** leave to

appeal <u>in forma pauperis</u>

s/Marianne O. Battani
**HONORABLE MARIANNE O. BATTANI**
**UNITED STATES DISTRICT JUDGE**

Dated: <u>October 23, 2013</u>

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order
was served upon the Petitioner via ordinary U.S. Mail and Counsel for the
Respondent, electronically.

s/Bernadette M. Thebolt
Case Manager

22